**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. CR 06-2607 MCA |
| | § | |
| MICHAEL ANDREW MORALES, | § | |
| | § | |
| Defendant. | § | |

## MR. MORALES' MOTION FOR DISCOVERY

MICHAEL ANDREW MORALES, Defendant, by and through the undersigned appointed counsel, Marc H. Robert, Assistant Federal Public Defender, moves the Court to enter an order requiring the disclosure of the material identified below, for the reasons set forth below, and in support of his motion would respectfully show the Court as follows:

1.      Mr. Morales is charged with possession of more than 500 grams of cocaine with the intent to distribute.  He was arrested on October 5, 2006.  He waived preliminary hearing on October 11, 2006.  He was released on conditions and remains free pursuant to those conditions.  An indictment was filed on December 21, 2006.  Mr. Morales was arraigned on January 4, 2007 and entered a plea of not guilty to the charge in the indictment.  Trial is set for February 26, 2007.  A motion for suppression of evidence is has been filed contemporaneously with the filing of this motion.  The discovery sought by this motion is needed to proceed with the suppression issue.

2.      This case arises from a search at a border patrol checkpoint.  The search of Mr. Morales's vehicle was said to have been supported by an alert by a drug detecting dog to Mr.

Morales's vehicle.  Mr. Morales contends that the dog did not alert to the vehicle in any recognizable way, and that the search of his vehicle was without reasonable suspicion or probable cause, and was thus unconstitutional.

3.     The government has previously declined to disclose such  information or material in other cases.  An order of the Court is necessary for the timely provision of this essential information.

4.     The reliability of a so-called drug detecting dog is entirely dependent on the dog's training, which includes the manner in which the dog is used and reinforced on the job; and on continuous training aimed at both "extinguishing" erroneously reinforced tendencies and at strengthening appropriate tendencies.

5.     In order to know whether the dog actually alerted, it is necessary to examine all the records relating to the dog's training and its handling on the job.  If properly kept, the records will show the manner in which the dog was trained to alert to various stimuli, which in turn will provide the parties and the Court with information which will be essential in answering some of the questions raised in this case.

6.     In order to know whether the dog is reliable, it is again essential to examine the requested records.  This is true for at least two reasons.  First, if properly kept, the records will provide the parties and the Court with an empirical method for evaluating the dog's past performance, both during training and on the job.  Without an opportunity to examine and evaluate such empirical documentation, an understanding of the validity of the dog's performance, and the constitutionality of the search in this case, is impossible.  Second, if the records are not properly kept, the dog's continuing training cannot be sufficient to permit

**MOTION FOR DISCOVERY - PAGE 2**

reasonable reliance on the dog's actions in criminal cases.  The way that detecting dogs are trained during the course of their service requires detailed recordkeeping of the dog's activities.  The content of those records determines the nature of the ongoing training of the dog.  If the records are incomplete or inadequate, the dog's ongoing training cannot maintain the proficiency needed to establish the dog's reliability.  It is thus impossible to evaluate the dog's training, and the dog's reliability, without obtaining and examining those records.

7.     Mr. Morales requests that the Court order the disclosure of the following material concerning the dog:

(a)     Any and all videotapes showing incidents in which the dog was used in law enforcement, from October 1, 2003  to the present;

(b)     Any and all records, including without limitation training records and reports, reports of incidents on the job, proficiency training records, including both documents and any video recordings, relating to the training and use of the dog;

(c)     Any and all departmental or organizational policies, rules, directives, memos and operating procedures relating to the training of drug detector dogs for the United States Border Patrol (USBP), including certification standards for the dog and the standards of any and all canine organizations to which the USBP may belong;

(d)     Any and all departmental or organizational policies, rules, directives, memos and operating procedures relating to the field use of drug detector dogs by the USBP;

(e)     Any and all news articles, recordings or videotapes about the dog;

(f)     Any and all departmental or organizational rules, directives, reports, memos and operating procedures relating to the last date of certification testing for the dog, including any recordings, whether audio, video or digital, of the actual testing;

(g)     Any and all documentation listing all drugs the dog is trained to detect, including synthetic drugs;

**MOTION FOR DISCOVERY - PAGE 3**

(h)     Any and all documentation defining the "final response", or form of alert, that the dog was trained to make upon detecting drugs;

(I)     Any and all documentation identifying the dog's primary reward;

(j)     Any and all documentation of the specific training aids used to train the dog, including without limitation the chemical composition, purity and packaging of the controlled substances used in such training;

(k)     Any and all documentation of the laboratory analysis of all seizures of suspected controlled substances based on a final response, or alert, by the dog;

(l)     Any and all documents regarding departmental or organizational policies, rules, directives, memoranda and operating procedures describing or setting forth the minimum departmental standards for proficiency training for drug detecting dogs;

(m)     Any and all documents regarding departmental or organizational policies, rules, directives, memoranda and operating procedures which describing or setting forth the response/find ratio that canine search teams must maintain to remain in field service; and

Any and all documents, including without limitation reports, memoranda, recordings and computer files, describing the number of occasions during which USBP officers found probable cause to search on the basis of an alleged final response, or "alert", by a drug detecting dog.

8.     It will likely be necessary to present the testimony of an expert in the training and use of drug detecting dogs for the suppression hearing in this case.  The information requested is essential for meaningful evaluation and testimony by such an expert.

9.     The search in this case could not legally have occurred without the probable cause allegedly provided by the dog's alert.  If the dog is not properly trained, including proficiency or maintenance training, the dog's alert is no more reliable than the spin of a roulette wheel.  Due process does not allow the deprivation of liberty on so shabby a foundation.  The records requested are essential to the provision of effective assistance of

MOTION FOR DISCOVERY - PAGE 4

counsel, and to the satisfaction of the constitutional guarantee of due process.

10.    Other courts have recognized the importance of the disclosure of the requested information and have ordered its disclosure.  Courts have recognized the dangers in unreservedly accepting the results of a dog sniff.  For example, the handler can cue the dog to respond in subtle ways which may not be apparent to an untrained observer, and sometime not apparent even to the handler.  *See United States v. Trayer*, 898 F.2d 805 (D.C. Cir. 1990) ("we are mindful that less than scrupulously neutral procedures, which create at least the possibility of unconscious 'cuing', may well jeopardize the reliability of dog sniffs").  The Tenth Circuit has said that a dog's poor performance record can negate probable cause. *United States v. Ludwig*, 10 F.3d 1523 (10th Cir. 1993) ("A dog alert might not give probable cause if the particular dog had a poor accuracy record.").  It cannot be known whether the dog had a poor accuracy record without having all of the requested information about the dog's training and handling.  In the absence of that information, the *Ludwig* pronouncement confers a right wholly without a remedy.

11.    The undersigned counsel attempted without success to confer with Assistant United States Attorney Amanda Gould.  However, the government has previously been adamant in opposition to requests of this kind.  It is presumed that the government opposes this request.

WHEREFORE, MICHAEL ANDREW MORALES, Defendant, by and through the undersigned counsel, respectfully prays that the Court enter an order requiring the disclosure of the material identified herein, and providing for such other and further relief to which the Court may find Mr. Morales to be justly entitled.

**MOTION FOR DISCOVERY - PAGE 5**

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
500 S. Main St., Suite 600
Las Cruces, NM  88001
(505) 527-6930
Fax (505) 527-6933

*filed electronically January 24, 2007*
MARC H. ROBERT
Assistant Federal Public Defender
Las Cruces Office

*Counsel for Mr. Morales*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Discovery was served on Assistant United States Attorney Amanda Gould, 555 Telshor, Suite 300, Las Cruces, New Mexico, 88011, by placing a copy of the document in the United States Attorney's box at the Las Cruces office of the Clerk for the District Court on January 24, 2007 .

*filed electronically January 24, 2007*
MARC H. ROBERT

L:\Robert\polston\dog disc motion.wpd

**MOTION FOR DISCOVERY - PAGE 6**